Riley v. Rowe, &c.

CASE 97--ACTION FOR A MANDAMUS.--FEB. 28.

# Riley v. Rowe, &c.

APPEAL FROM MARSHALL CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. AFFIRMED.

112  817
e118 435

112  817
f125  564

112  817
f130  541

INTOXICATING LIQUORS—DISCRETION OF TOWN TRUSTEES TO REFUSE LICENSE—APPLICATION AT A MEETING CALLED FOR ANOTHER PURPOSE —MANDAMUS.

Held: 1. Under Kentucky Statutes, section 3704, subsec. 4 (part of charter of towns of sixth class); providing that the granting of licenses to sell liquor shall be "under the exclusive control of the board of trustees, who may refuse to grant license in its discretion," provided, however, that when a majority of the voters have voted in favor of the sale of liquor, "then the said board of trustees of such town shall have no right, power, privilege, or discretion to refuse to grant licenses," the board, while it has no power, after a vote has resulted in favor of the sale of liquor, to arbitrarily refuse all applications for license, still it has discretion to refuse to grant a license, to an improper person, or for the location of a saloon at an improper place; but it is its duty to grant license to an applicant at a proper place if he is a proper person, and applies in a proper way.

2. The board properly refused a license applied for at a special meeting called for another purpose, at which all the members of the board were not present.

3. As plaintiff has not yet applied for license in a proper way, he is not entitled to a mandamus to compel the trustees to grant him a license, though he alleges that they have declared that

Riley v. Rowe, &c.

they will not grant any license, the presumption being that
when they understand their duty, and application is properly
made, they will not refuse to grant license to a proper appli-
cant at a proper place, and thus willfully disobey the positiv
mandate of the statute.

REED, GREER, and OLIVER & CECIL REED, attorneys for ap-
PELLANT.

The question presented by this appeal is, the sufficiency of
appellant's petition which seeks to compel the board of trus-
tees of the town of Benton, a town of the sixth class, under the
laws of this Commonwealth by mandamus proceedings, to grant
him a license to continue in his business, that of a saloon keeper,
in which he has been engaged for several years, and which had
been refused by said board.

This relief was refused him by the court below as appears
from the judgment sustaining a demurrer to his petition.

The only question presented by counsel for appellees or con-
sidered by the lower court, is, the constitutionality of subsection
4 of section 3704, Kentucky Statutes, conceding that the allega-
tions of the petition are sufficient if the law referred to is
valid.    The contention of counsel and the opinion of the court
was, that subsec. 4 of section 3704, Kentucky Statutes is in con-
flict with subsecs. 27 and 29 of sections 59, 60 and 61 of the Con-
stitution.

The sole reason upon which this contention is based, is, that
said section is invalid on account of being a local and special
act, and therefore, repugnant to subsection 27 of sec. 59 of the
Constitution.

Our contention is that the Legislature in clause 4 of sec. 3704,
undertook to leave the operation, or suspension of what is known
as the local option law, to the will of the people in towns of
the sixth class, instead of the will of five citizens who hap-
pen to constitute the board of trustees.    To have delegated this
power to the board of trustees after the question had been sub-
mitted to the people, would be in direct violation of both the
letter and spirit of section 61 of the Constitution, and the local
option law.

If the vote under the local option law is against the sale, the
trustees have no power to grant license, but if the vote is for
the sale they have no power or discretion to refuse the license.

### AUTHORITIES RELIED ON.

Zable v. Louisville Baptist Orphans, 92 Ky., 89; sec. 3704,
subsec. 4, Kentucky Statutes; sec. 59, Clause 27 Ky. Constitu-

Riley v. Rowe, &c.

tion; subsecs. 27 and 29 of sec. 59 and secs. 60, 61 and 156 of present Constitution; chapter 89, Kentucky Statutes, act July 1, 1893; Safety Bldg. & Loan Co. v. Ecklar, 20 R., 1770.

J. G. LOVETT AND L. P. PALMER, FOR APPELLEES.

Section 156 of our Constitution, we submit, can not mean that any general law, as for example the local option law, chap. 81, Kentucky Statutes, may be warped and twisted around, as seems to have been done in this case, so as to circumscribe or shut out the discretion and ideas of trustees of small towns, any more than it does those of even the largest cities. To limit discretion on any one subject, or to give it to one and deny it to another, or to deny it entirely to one while silent as to another is local or special legislation of the rankest sort. To show that the trustees of all towns and all classes of towns and cities under the old local option law of 1874 had discretion at all times and under all circumstances, to grant or refuse liquor license, we refer you to 13 Bush, 488 and 14 Bush, 672. Since the law or charter governing towns of the sixth class was passed in 1893, prior to March 10, 1894, when the last local option law was approved, it applied to the law then in force which as above set forth guaranteed to trustees of all towns a discretion, therefore a charter which seeks to dislodge this discretion is in conflict with sections 59 and 61 of our State Constitution.

Mandamus is not proper to control discretion. The appellant does not claim that the trustees abused their discretion or that a saloon is necessary in said town for the benefit of the public, but claims it as a right.

### AUTHORITIES CITED.

Cooley's Con. Lim., 484; 20 Ky. Law Rep., 805; 1772; Gen. Dig. A. & E. An. N. S., vol 6, 1898, p. 1925; Discretion of Trustees, 13 Bush, 488; 14 Bush, 672; Mandamus not proper, remedy, 18 B. Mon., 17; 14 Bush, 642; 79 Ky., 267; 80 Ky., 354; 82 Ky., 632; 85 Ky., 177; 92 Ky., 227; Kentucky Statutes, ch. 81; L. R. A., 33, p. 589; 39 Am. Dec., 189; L. R. A., 70; 4 L. R. A., 751; 23 L. R. A., 525; 2 L. R. A., 577; 6 L. R. A., 337; 7 L. R. A., 193; 11 L. R. A., 729; 13 L. R. A., 183; 14 L. R. A., 586, 725, 755.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

This case involves the construction of subdivision 4, section 3704, Kentucky Statutes, relating to the government of towns of the sixth class. It is insisted that, where a

vote has been taken under the local option law, and result-
ed in favor of the sale, the trustees have no discretion as
to the granting of license, and must license all applicants,
regardless of their moral character or of the circumstances.
The provision is as follows: "The license tax to sell spirit-
ʼuous, vinous or malt liquors shall not be less than one
hundred and fifty nor more than five hundred dollars;
and no such license shall be issued or granted in any town
where the sale of such liquors is now forbidden by law
until such law be changed; may impose penalties for viola-
tions of the conditions of said license; may provide for
the annulment or suspension of the license privilege for
violation of the conditions of terms of license, or of the
ordinances governing the same, and no license for any bus-
iness or to any person shall be granted for a longer time
than one year, and the granting of licenses shall be under
the exclusive control of the board of trustees who may
refuse to grant license in its discretion; provided, that in
any town of the sixth class, in which the question as to
whether spirituous, vinous and malt liquors might or
should be sold, has been since September first, one thous-
and eightʔ hundred and ninety-two, or shall hereafter be
submitted to the voters thereof, and the majority of votes
cast thereat were or shall be in favor of the sale of such
liquors therein, then the said board of trustees of such
town shall have no right, power, privilege or discretion to
refuse to grant licenses to sell such liquors therein until
another election is held therein as provided by general
laws and a majority of the voters of said town have voted
against the sale of such liquors." The language, "then
the said board of trustees of said town shall have no
right, power, privilege or discretion to refuse to grant
licenses to sell such liquors therein until another election

Riley v. Rowe, &c.

is held,"-etc., does not aptly convey the idea that the trustees are to have no discretion as to what applicants shall be licensed. The terms used simply deny them power "to refuse to grant licenses." That this was all the Legislature had in mind seems clear from the other provisions of the statutes adopted by the same General Assembly. It has long been a settled legislative policy in the State to regulate the sale of spirituous liquors, and to grant license only to persons of good character at such places as were reasonably suitable, and in such numbers as the public service probably required. Experience has shown that the selling of whisky by persons of bad character is especially injurious to the community, and most likely to bring about fraud and imposition on those who drink. It has also been shown by experience that the multiplication of saloons beyond the demands of the community also leads to bad results. Therefore, as in the statutes that had long before existed in the State, by section 4203, Kentucky Statutes, no license shall be granted if the majority of the legal voters in the neighborhood protest against it, nor to any person of bad character who does not keep an orderly, law-abiding house. These provisions apply outside of incorporated cities and towns. But in the acts for the government of cities of the first, second, third and fourth classes substantially similar provisions are made. Thus, by section 3033, Kentucky Statutes, no license shall be granted to sell liquor in any precinct if the retailing of liquor at the place named will be injurious to the people thereof, or if a majority of them protest against it. In the second, third, and fourth classes discretion is conferred on the legislative board of the cities in general terms. In the act governing cities of the fifth class there is a provision substantially similar to

that above quoted as to towns of the sixth class. See
section 3637, subsec. 4, Kentucky Statutes. But in the
act for the government of towns of the fifth and sixth
classes large discretionary powers for legislative purposes
are vested in the city council or board of trustees, and it
would not seem that in the section quoted the Legislature
had in mind taking away the discretion from the city au-
thorities in these two classes of towns of determining to
whom a license should be granted—a power they had al-
ways exercised and is confessedly conferred in all other
cases on the authorities entrusted with the power of li-
censing applicants. It will be observed that in the body
of the section these words are used: "The granting of
licenses shall be under the exclusive control of the board
of trustees, who may refuse to grant licenses." Then fol-
lows the proviso that, where a vote is taken under the local
option law, and is in favor of the sale, "then the said
board of trustees of such town shall have no right, power
or privilege or discretion to refuse to grant licenses to sell
such liquors therein until another election is held therein
as provided by general laws and a majority of the voters
of said town have voted against the sale of such liquors."
The purpose of the proviso is to limit the general discre-
tion conferred by the preceding words, and to require the
trustees to conform to the popular will by issuing licenses
so long as it remains unchanged. Previous to the taking
of the vote the sale of intoxicants had not been prohibited
in the town. When a vote is taken under the local option
law, resulting in favor of the sale in a community in which
the sale has not been prohibited, the effect of the vote is
simply that the people decline by this vote to put the local
option law in effect. The vote in favor of the sale does
not have the effect to vest in everybody the right to open

and run a saloon who will pay the license fee, regardless
of his fitness, or the judgment of the trustees as to the
necessity of the saloon or the wishes of the neighborhood.
The vote only settles the question that they must issue
licenses. They have no discretion to refuse to grant li-
censes; that is, to license nobody. The trouble the Legis-
lature had in mind in adding the proviso was that in some
communities, after the people had voted for the sale, the
trustees arbitrarily undertook to defeat the popular will
by refusing the license to all applicants. This the Legis-
lature forbade. But neither the language used nor the
context requires the construction that they were to license
all applicants without regard to their character, the needs
of the community, or the wishes of the neighborhood in
which the saloon was to be located. If they had meant to
make such a radical change in the existing law, instead
of saying that the trustees shall have no right "to refuse
to grant licenses" they would have used other language
sufficient to convey that idea to the common understand-
ing. The denial of "discretion to refuse to grant licenses"
naturally means no more than that the trustees must
grant licenses after the vote has been taken and has re-
sulted in favor of the sale. But it leaves unaffected the
discretion vested in the trustees for the welfare of the
town to determine who is a proper applicant to whom li-
cense should be granted. A discretionary power of this
character, which is necessary for the well-being of the
town, should not be deemed taken away, except by the
clearest language, especially where it has been a settled
legislative policy to vest it in the officers granting such
licenses; and this policy is contingent as to all other
cities and towns and in all the country districts.

It appears from the record in this case that appellant

Riley v. Rowe, &c.

applied to the city council at a special meeting, which was
called for another purpose, and at which all the members
of the board were not present. When the meeting was
called, the trustees had a right to assume that no other
business would be transacted at it than that specified in
the notice, and the board properly refused to grant him a
license at that meeting. The judgment dismissing his pe-
tition was therefore proper. 1 Dill. Mun. Corp., section
264, and note; Mor. Priv. Corp., section 359. But it is
the duty of the trustees to grant the license to an applicant
at a proper place if he is a proper person, and applies in the
proper way. This duty they are as much bound to per-
form under their official oaths as any other duty imposed
on them by law. Though it is alleged in the petition
that they have declared they will not grant any licenses,
we can not believe that, when they understand their duty,
they will willfully refuse to obey the positive mandate of
the statute, which they have sworn to execute faithfully,
and to the best of their ability. It appears from the rec-
ord that they have fixed the price of the license at $500,
and there is nothing before us to indicate that they will
deliberately refuse to discharge their plain official duty
under their oaths of office, and grant license to a proper
applicant at a proper place.

Judgment affirmed.

Separate opinion by Chief Justice Guffy:

This action was instituted in the Marshall circuit court
by the appellant to compel the appellees, trustees of the
town of Benton, a city of the sixth class, to grant him a
license to retail spirituous, vinous and malt liquors in said
town. It appears from the petition that on the 10th of
March, 1898, the board of trustees fixed the price of liquor

license at the sum of $500, and that in May, 1898, an elec-
tion was held in said town according to law for the pur-
pose of taking the sense of the voters upon the question
as to whether or not such liquors should be sold in said
town, and it is averred that a majority of those voting
voted for the sale of such liquors.  It is further alleged
that plaintiff was, and had been for several years last
past, a saloon keeper, engaged in the sale of spirituous,
winous and malt liquors at his brick storehouse on the
west side of Main street opposite the court house in said
town; that on the 17th of April, 1899, he appeared before
the board of trustees, and made application to said board
for license to sell liquor at his brick house aforesaid for a
period of one year, and introduced proof that he was a
man of good moral character, and kept an orderly house
in all respects required by law, and tendered to said
board $500, the price fixed by law for license to sell liquor
as aforesaid; whereupon the question was put before the said
board by its chairman, W. C. Rowe, as to whether or not
said license should be granted; and that W. C. Rowe, L.
E. Dood, T. E. Barnes and Clint Holland each wrongfully
and unlawfully, and in violation of this plaintiff's right,
cast their vote in the negative, and said board and each
member thereof, when they had no right, power or dis-
cretion to refuse to grant plaintiff said license, did wrong-
fully and unlawfully refuse to grant same.  It is further
alleged that said trustees each threatened to refuse and
prevent this plaintiff from engaging in the said
business in said town during all their term of office.
Wherefore he prayed the judge to make a temporary
order requiring defendants to grant him the license
aforesaid, and for a judgment and decree directing
and compelling the defendants to grant him said license.

The defendants entered and filed a demurrer to the petition, which demurrer was sustained by the court. Afterwards plaintiff filed an amended petition, and the defendants entered a demurrer to said petition as amended, which was overruled, but the plaintiff withdrew the amended petition and declined to plead further, and excepted to the ruling of the court in sustaining the demurrer to the original petition, and prayed an appeal to the court of appeals, which was granted. At the March term, 1900, of the Marshall circuit court, the plaintiff offered to file an amended petition, which was objected to by the defendants, and the objection sustained by the court for the reason that it did not state a cause of action, and thereupon plaintiff's action was dismissed, and from that judgment this appeal is prosecuted.

In addition to the averments in the original petition heretofore referred to, the amendment offered alleged that prior to February, 1898, the sale of spirituous, vinous, and malt liquors was permitted in the town of Benton, a vote having been taken on the 2d of June, 1891, which resulted in a majority voting for the sale. The petition then shows that in May, 1898, an election was again held in the town of Benton, and a vote taken as to whether or not spirituous, vinous and malt liquors should be sold in said town, and that a majority of those voting, voted in favor of such sale. It is again alleged that defendants continued to refuse to grant plaintiff license to sell such liquors, and, unless required and compelled to do so by the court, they will continue to so refuse, which, it is alleged, is contrary to law, and in violation of plaintiff's rights, and will cause great irreparable injury to him in preventing him from carrying on and engaging in his business, which he has been engaged in for several years last past. It is the conten-

tion of appellant that by the provisions of subsection 4
of section 3704, Kentucky Statutes, it was the duty of the
defendants to issue the license applied for, and that they
had no discretion or right to refuse to grant the license.
It is the contention of appellees that the statute in ques-
tion is unconstitutional, and therefore void. Subsection
4 of section 3704, Kentucky Statutes, provides, among
other things, that the license tax to sell spirituous, vinous
and malt liquors shall not be less than $150 nor more than
$500, and no such license shall be granted or issued in any
town where the sale of such liquors is now forbidden by
law until such law be changed; may provide for the annul-
ment or suspension of the license privileges for violation of
the conditions of terms of license, or of the ordinances
governing the same; "and no license for any business or
to any person shall be granted for a longer time than one
year, and the granting of license shall be under the ex-
clusive control of the board of trustees who may refuse to
grant license in its discretion; provided, that in any town
of the sixth class, in which the question as to whether
spirituous, vinous and malt liquors might or should be
sold, has been since September first, one thousand eight
hundred and ninety-two, or shall hereafter be submitted
to the voters thereof, and the majority of votes cast there-
at were or shall be in favor of the sale of such liquors
therein, then the said board of trustees of such town shall
have no right, power, privilege or discretion to refuse
to grant license to sell such liquor therein until another
election is held therein as provided by general laws, and
the majority of the voters of said town have voted against
the sale of such liquors." It will be seen that the fore-
going is part of the statute applicable alone to cities of
the sixth class. Section 3637, Kentucky Statutes, with

reference to cities of the fifth class, authorizes and provides for liquor license, and has substantially the provision above quoted from the charters of cities of the sixth class. The concluding portion of subsection 4 of section 3637, above referred to, reads as follows: "The issuing of the different licenses under this chapter shall be under the exclusive control of the city council, who may refuse to grant license, in its discretion, except as herein provided." The issuing of license in all other towns seems to be wholly left to the discretion of councils of the several cities. Subdivision 2, art. 10, c. 108, Kentucky Statutes, confers upon the county court power to license persons to vend spirituous, vinous, and malt liquors by retail; but it has been heretofore decided by this court that, in so far as the charters of the various towns conflict with the subdivision aforesaid, the town charters prevail. It is provided by section 61 of the Constitution that the General Assembly shall by general law provide a means whereby the sense of the people of any county, city, town, district, or precinct may be taken as to whether or not spirituous, vinous and malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. Section 59 of the Constitution provides that "the General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes." Then follow quite a number of subjects or subdivisions. No. 27 reads as follows: "To provide a means of taking the sense of the people of any city, town, district, precinct, or county, whether they wish to authorize, regulate or prohibit the sale of vinous, spirituous or malt liquors or alter the liquor laws." It is provided in section 156 of the Constitution that the cities and towns of this Commonwealth, for the purposes of their organization and government, shall be

'divided into six classes. The organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. It is suggested for appellees that the petition fails to show that a legal or valid election was held in May, 1898; but, taking all the averments and exhibits together as true—as must be taken on demurrer—we are 'inclined to the opinion that the election was legally held. It seems to be a well-settled rule of law that laws applying only to a class are not of necessity special or local legislation. But it must also be such a classification as is reasonable; or, in other words, there must be some good reason for the classification. In the case at bar it seems that the law takes away all discretion from the board of trustees as to the licensing of retailers of spirituous liquors. If the act be valid, it seems that every man in the town of Benton who would pay the license fee must of necessity be licensed by the trustees. With the exception of the trustees of the fifth and sixth class towns, no such mandatory duties have ever been required of any court or council or board authorized to grant such license as sought in this case. The authorities of all other towns are allowed a discretion as to the issual of such license. The county courts have always been allowed a discretion in such matters, and we see no reason for denying discretion to the trustees of Benton in such matters. Therefore the statute in question must be held to be local and special, and arbitrary as well. Indeed, there is less reason for making such elections mandatory upon the licensing power in a small town than in a larger one. We know from common history that the retailing of liquor in a small town like Benton affects a large portion of the people in the

county, and materially so. In this case 69 men seem to have voted for the sale of liquor, and about 49 against it, which vote indicates a voting population of about 125 voters; and the contention now is that, as a result thereof, every man who will pay for a license in the town is entitled thereto, and the trustees have no power or discretion to refuse. There would be much more reason in making the vote of a large city mandatory upon its council to issue license than in the case at bar. The licensing in the large cities does not materially affect any person except the residents of the city. It seems to us that the provision of the statute in question is in conflict with subdivision 27 of section 59 of the Constitution, for it will be seen that said subdivision prohibits the enactment of any special law to regulate or prohibit the sale of liquor or alter the liquor laws. The statute in question is a material alteration and a material regulation of the general liquor law of the State for the reason that the general law, as before stated, left the licensing authorities some discretion in regard thereto. In our opinion, the statute in question is unconstitutional and invalid in so far as it takes away the discretionary power of the trustees to issue or withhold license. If the trustees have any discretion at all, it follows that the injunction or mandamus sought can not be awarded, for the reason that the mandamus can not issue to control the discretion of an officer or city council.

Judges DuRelle and O'Rear concur.