CASE 67.—MANDAMUS BY J. F. SCHWIERMAN AGAINST BOARD OF TRUSTEES OF TOWN OF HIGHLAND PARK AND OTHERS, TO GRANT HIM A LICENSE TO SELL INTOXICATING LIQUORS.—November 19.

# Schwierman v. Town of Highland Park

Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

Thos. R. Gordon, Judge.

From an order dismissing the writ, petitioner appeals.—Affirmed.

1.  Evidence—Judicial Notice—Population of Towns.—Under Constitution section 156, providing that towns with a population of less than 1,000 shall be assigned to the sixth class, the court will take judicial notice that the population of a town of that class does not exceed 1,000.

2.  Intoxicating Liquors — Licenses — Discretion — Statutes.—Ky. Stats., 1903, section 3704, provides that, in any town of the sixth class having voted for the sale of liquor, the board of trustees shall have no right to refuse licenses until another election is held and a vote returned against such sale. Held. That the board of trustees of a town of the sixth class, which had voted to permit the sale of liquor, still had discretion as to the number of licenses to be granted, and, having already granted four licenses, properly refused to grant a fifth application, though there was no objection against the applicant or his proposed place of business.

3.  Intoxicating Liquors—Nature of License.—A liquor license is

not a right or privilege that any citizen may demand, but is in the nature of a favor that may or may not be granted according to the discretion of those in authority.

A. B. BENSINGER and WM. N. PERRY for appellant.

### POINTS AND AUTHORITIES.

1. In a town of the sixth class in Kentucky where the sense of the people has been taken by vote at an election under section 3704, Kentucky Statutes, as to whether spirituous, vinous and malt liquors should be sold, and the vote resulted in a majority of the votes being cast in favor of the sale, and where an applicant for a license to sell such liquors who is a person of good moral character, and possesses all of the necessary qualifications which entitle him to a license, and where said applicant applies for said license to the board of trustees of said town in a proper way, and the place for the exercise of the license is a proper place, then the said board of trustees can not arbitrarily refuse to grant him a license. (Riley v. Rowe, 112 Ky. 817; George, etc., v. Winchester, 118 Ky. 429; Ky. Stats., section 3704; Conlee v. Clay City, 102 S. W. 862, 31 Ky. Law Rep. 533.)

2. Where an application for a saloon license is not met by a remonstrance charging the applicant with being an improper person or that the place is not a proper place or some other good and sufficient charge, then there is no issue to be tried, and a supposed hearing where only temperance speeches are made calling on the board to reject the license because of the personal prejudices of the speakers, is an arbitrary and unlawful trial of the application. It is the duty of the license board to grant both parties a hearing and to receive only relevant evidence on the issue presented under the rules governing civil trials in courts of law. (Cyc., vol. 23, p. 133; Watkins v. Grieser, 11 Okla. 302, 66 Pac. 332; People v. Sackett, 17 Misc. N. Y. 405, 40 N. Y. Supp. 413; Fletcher v. Crist, 139 Ind. 121; Bryan v. Jones, 34 Ind. App. 701; Bryan v. DeMoss, 34 Ind. App. 473; Weber v. Lane, 99 Mo. App. 69; State v. Columbia, 17 S. C. 80.)

3. Where an applicant for a license to sell liquors is a proper person and he applies in a proper way and the place is a proper place, and the board of trustees arbitrarily refuses to grant him a license, then mandamus will lie to compel them to issue same. (George v. Winchester, 118 Ky. 429; Conlee v. Clay City, 102 S. W. 862, 31 Ky. Law Rep. 533; People v. Mills, 91 Hun. (N. Y.) 144.)

W. T. McNALLY, T. A. McDONALD and A. W. DORSEY for appellee.

POINTS AND AUTHORITIES.

Under section 3704, subsection 4, of the Kentucky Statutes, the board of trustees of town of the sixth class in Kentucky is not divested of a discretion in refusing to grant licenses to retail spirituous, vinous and malt liquors within the town, where the proposed place for the exercise of the license is not, in the judgment of the board of trustees, a proper place, or from the fact that in the judgment of the board of trustees there are already in the town as many saloons as the public service requires. (Riley v. Rowe, 112 Ky. 817; George, etc., v. Winchester, 118 Ky. 429; Conlee v. Clay City, 31 Ky. Law Rep. 533; Ky. Stats., section 3704; Cyc. 23, 135; Cyc. 23, 133.)

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant Schweirman sought in this proceeding to compel by mandamus the board of trustees of Highland Park, a town of the sixth class, to grant him a license to sell by retail intoxicating liquors. The judge before whom the application was made refused to grant the relief sought, and as a result this appeal was prosecuted. In September, 1906, the town of Highland Park, at an election held for the purpose of ascertaining the sense of the people as to whether or not they wished spirituous, vinous, and malt liquors sold, voted in favor of the sale. Ky. Stats., 1903, section 3704, subdivision 4, provides in part that:

"No licenses for any business or to any person shall be granted for a longer time than one year, and the granting of licenses shall be under the exclusive control of the board of trustee who may refuse to grant licenses in its discretion, provided: That in any town of the sixth class in which the question as to whether or not spirituous, vinous, and malt liquors

might or should be sold has been since September first, one thousand, eight hundred and ninety-two, or shall hereafter be submitted to the voters thereof, and a majority of the votes cast thereat were or shall be in favor of the sale of such liquors therein, then the said board of trustees of such town shall have no right, power, privilege or discretion to refuse to grant licenses to sell liquors therein until another election is held therein as provided by general laws and a majority of the voters in said town have voted against the sale of such liquors.''

It is the contention of appellant that under this statute the board of trustees have no discretion to exercise in the matter of whether or not licenses shall be granted if the application is made in the proper way, the applicant a person of good moral character, and the place at which he desires to establish his business is suitable for the purpose, but must grant the license.

The argument for appellee is that, although the applicant may be a person of good moral character, and his application be presented at the proper time and place, and there be no substantial objection to the locality in which it is proposed to carry on the business, yet the board of trustees for other reasons, in the exercise of a reasonable discretion, may refuse to grant a license. For the purposes of what we desire to say, it may be conceded that the record shows that the applicant possessed the necessary qualifications to entitle him to a license, that he applied for the license in the manner provided by law, and that the place where he desired to carry on and conduct his business was not objectionable. So that it narrows down to the question whether or not, in a state of case like this, the board of trustees have any discretion.

At the time the application for license was made there were four saloons in the town at which intoxicating liquors were sold by retail. The record does not disclose the population of the place, but in view of the fact that it is a sixth class town we may take judicial notice of the fact that the population does not exceed 1,000. The Constitution, section 156, provides that towns with a population of less than 1,000 shall be assigned to the sixth class, and towns with a population of 1,000 or more, and less than 3,000, to the fifth class. But, if the board of trustees have no discretion at all in the matter, the number of existing saloons would not give them the right to deny a license to any person or persons possessing the necessary qualifications who made application in the proper manner to sell at a suitable place. We do not, however, think that it was intended by the statute to limit the right of the board of trustees to refuse licenses only to such persons as do not possess the necessary personal qualifications, or who do not apply in the regular way, or who desire to set up in business at a place to which substantial objection might be made. The board, on the one hand, is not authorized, under the statute, to arbitrarily or capriciously refuse to grant a license, nor, on the other hand, is it deprived of all discretion. The trustees have not the power of prohibition, but, in our opinion, have the right to decide how many saloons are required for the convenience and needs of the town, whose people have said they wanted them.

In Riley v. Rowe, 112 Ky. 817, 23 Ky. Law Rep. 2169, 66 S. W. 999, the court had under consideration a case similar to this, and in the course of the opinion it was said: ''The language, 'then the said board of trustees of said town shall have no right, power, priv-

ilege or discretion to refuse to grant licenses to sell such liquors therein until another election is held.' does not aptly convey the idea that the trustees are to have no discretion as to what applicant shall be licensed. The terms used simply deny them power to refuse to grant licenses. * * * It has long been the settled legislative policy in the State to regulate the sale of spirituous liquors and to grant licenses only to persons of good moral character, at such places as were reasonably suitable, in such numbers as the public service probably required. Experience has shown that the selling of whisky by persons of bad character is especially injurious to the community, and most likely to bring about fraud and imposition on those who drink. It has also been shown by experience that the multiplication of saloons beyond the demands of the community also leads to bad results. * * * The vote in favor of the sale does not have the effect to invest in every party the right to open and run a saloon who will pay the license fee, regardless of his fitness, or the judgment of the trustees as to the necessity of the saloon or the wishes of the neighborhood. The vote only settles the question that they must issue licenses. They have no discretion to refuse to grant licenses—that is, to license nobody. But neither the language used, nor the context, requires the construction that they were to license all applicants without regard to their character, the needs of the community, or the wishes of the neighborhood in which the saloon was to be located.''

The principles announced in this case were reaffirmed in George v. Winchester, 118 Ky. 428, 80 S. W. 1158, 26 Ky. Law Rep. 170; Conlee v. Clay City, 102 S. W. 862, 31 Ky. Law Rep. 533.

The board of trustees in these towns are elected by

the people for the purpose of managing and controlling the affairs of the town within statutory limits. It is to be presumed that they will perform faithfully their duties by carrying out the reasonable will and wish of the people in respect to municipal affairs. It was not intended by the statute to take from these boards the exercise of all discretion, and to compel them, although it might be manifestly detrimental to the growth and prosperity of the town, hurtful to its morals, and injurious to its business, to issue licenses to every applicant who possesses the statutory qualifications and complied with the other requisites. But, as well said in Riley v. Rowe, supra, the object of the statute was to deny these boards the right to refuse to grant licenses to any person, thereby defeating the will of the people after they had declared in favor of the sale of liquor at an election held for that purpose. Of course, it is difficult to say how many saloons shall do business in a town, or what number of licenses the board may be compelled to grant, or at what point the mandatory requirements of the statute shall be satisfied, so that each case must be adjudged by the facts and circumstances applicable to it. But manifestly there is a point in respect to numbers alone beyond which the statute does not enjoin upon the trustees the imperative duty of issuing licenses. There is a place at which in this particular discretion begins, and this discretion the courts will not interfere with or seek to control unless it is clearly abused. Although the board in cases like this cannot refuse to grant any licenses, we hold that they may exercise a reasonable discretion in determining how many saloons are necessary to afford the citizens of the town the privilege they obtained by voting in favor of the sale of liquor. It

is also well to keep in mind that it is the interest of the town and its people, and not the interest of the applicant or the particular citizen, not only in respect to liquor licenses but concerning municipal affairs generally, that the board of trustees is charged with the duty of looking after. When the people in Highland Park voted in favor of the sale of whisky, they simply meant to assert that they were in favor of licensed saloons and the sale of liquor thereat; not that they wished to fix the number of saloons or designate the persons who should obtain licenses. Nor does the statute undertake to declare how many persons shall be licensed, but only that licenses must be granted to some person. If the board of trustees of a little town in which there are four licensed saloons have no discretion to refuse licenses to other applicants, then every person possessing the proper qualifications who is willing to pay the license fee must upon proper application be granted a license, without regard to the convenience, necessities, or demands of the people, and although the number might greatly exceed the needs of the community and be a positive disadvantage to all persons engaged in the business, to say nothing of the inhabitants generally, or some applicant must be discriminated against. Along this line the argument is made that if the trustees have the authority to limit the number of licenses, and the persons to whom they may be granted, it will result in favoritism—that licenses will only be granted to those who have the ear of the board. This may in some instances be true, but we know of no scheme that has ever been devised that will prevent this sort of inequality. In every case in which boards or bodies of men are vested with the discretion to appoint persons to office or place or

give them privileges not enjoyed by the body of the people, there is an occasional abuse of discretion, but this is not an argument against the power. It is merely a manifestation of one of the infirmities of government that cannot be remedied or cured. If there are a number of applicants for a place or privilege, and all cannot be satisfied, one or more of them in the very necessity of things must be refused; and this, everything else being equal, amounts to discrimination. And so in the granting of liquor licenses, except that in respect of these, the discrimination cannot be so pronounced as in other cases, because such a license is not a privilege or right that any citizen may demand or have for the asking. It is rather in the nature of a favor that may or may not be granted by those in authority. There is no disagreement among the authorities on this point. Hence we have little difficulty in reaching the conclusion that the argument in respect to discrimination and favoritism that might be urged with great force as to other harmless employments or pursuits, is weakened when it is attempted to be extended to a business that has always been the subject of police regulation and is generally regarded as a tolerable evil. This idea is well illustrated by the fact that it is always competent to inquire into the character of the applicant for license to retail liquor, and to refuse license if his reputation is immoral or objectionable. And so in respect to the locality at which it is proposed to conduct business. Here, a reasonable discretion may be exercised and license refused if it would not be proper to have a saloon at the proposed place. There are localities in every town in which it would be offensive to the common sense of all good people to have saloons, as, for instance, near

by or adjacent to schools or churches or in residence neighborhoods; and boards in the exercise of a discretion may refuse to license a grogshop next door to a schoolhouse, in front of a church, or in the center of a street set apart for residential purposes. Following out this theory, we see no reason why this discretion may not be extended to numbers as well as to persons and localities. When it is agreed upon all hands that the business of retailing liquor is of such a nature as to authorize license boards to exercise discretion as to persons and places, it would seem logically to follow that they should also have some discretion as to numbers. If it is needful to the welfare of the community to place the traffic in the hands of proper persons located at suitable places, why is it not equally essential that some control should be exercised as to the number of persons who may be granted the privilege? If discrimination can be lawfully exercised in selecting persons and localities, why may not there be a reasonable discretion, although it involves discrimination, as to the number of saloons. The retail liquor business has always been placed in a class by itself, and dealt with by special laws; so that the reasons that might deny the boards the right to discriminate between persons applying for licenses to engage in any other legitimate occupation and pursuit regulated and controlled by general laws have little or no application to this business. Although recognized legitimate and under the protection of the law, it stands apart from other lawful occupations, and must be treated in a class by itself.

We are unwilling to hold that the action of the board of trustees in the case before us was arbitrary or capricious, or that it was beyond their authority.

On the contrary, we should say that they acted well within the limits of a reasonable discretion in refusing under the circumstances to grant appellant a license, and the judgment of the lower court is affirmed.