## O'Brien v. Department Of Alcoholic Beverage Control et al.

December 19, 1947.

William B. Ardery, Judge.

Strother Kiser for appellant.

Weldon Shouse, Assistant Attorney General, R. P. Moloney, Jr., Drake & Howard, Frank Dailey, Wallis M. Bailey and D. P. Moloney for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This action grew out of the refusal of Anthony W. O'Brien, City Alcoholic Administrator for Lexington, to approve the application of appellees, W. E. McGurk and B. J. Bloemer, for retail package license. Appeal was thereupon made to the Alcoholic Beverage Control Board, hereafter referred to as Board, which, after an exhaustive hearing, directed the issuance of a license to each of the appellees.

The City Administrator appealed from this order to the Franklin Circuit Court. The Franklin Circuit Court affirmed the order of the Board. The City Administrator prosecutes this appeal.

It was stipulated in substance that there were no personal objections to appellees, McGurk and Bloemer; that their applications were in proper order; and that each of them is qualified.

The Board, pursuant to KRS 241.060, on August 20, 1946, presented and published for each county in this Commonwealth, in which local option was not in effect, a retail drink and retail package liquor quota, wherein the quota for the City of Lexington was fixed

at 38 retail package and 22 retail drink licenses. On February 7, 1947, a revised quota was published by the Board wherein quota for the City of Lexington was fixed at 41 retail package and 24 retail drink liquor licenses. Obviously, appellees made their application subsequent to these announced changes in quota.

Appellant contends that an ordinance adopted in 1939 by the City Commissioners of the City of Lexington limiting retail package licenses to 35, and a subsequent ordinance in 1941 limiting retail drink licenses to 20, both of which were approved by the local Administrator, deprived and took from the Board the power and authority to alter or change that quota without the consent of the City Commissioners and the local Administrator for that City.

Appellees insist that since the Board's finding was pursuant to the provisions of KRS 243.570, the review by the Circuit Court is limited to the following: Whether or not (a) the Board acted without or in excess of its powers; (b) the order appealed from was procured by fraud; (c) any substantial evidence supports the order appealed from. Since there is no suggestion of any fraud in the procurement of the Board's order, (b) above may immediately be eliminated.

We shall deal first with the question of whether or not the City has a right, independent of the Board, to limit licenses within its territorial limits, or, to put it another way, as between the City and the State, which has the superior right to control. The right and power to control fall within the police power. We must all agree that ordinarily municipalities have no original police power but only such as is conferred upon them by the State either expressly or impliedly. The Legislature may regulate in any manner which its discretion may dictate, however, subject to constitutional limitations. It may, if it chooses, delegate to municipalities authority to regulate and control traffic in intoxicating liquors, and in so doing it may empower municipalities to pass ordinances adopting regulations for such control. Or, the Legislature may, if it so chooses, provide other state agencies and empower them to regulate and control the traffic. See 30 Am. Jur., Intoxicating Liquors, Section 29 and following.

The cases cited and relied upon by appellant have to do with regulations at a time when the municipalities had been empowered to control such traffic. In the case of Christian Moerlein Brewing Co. v. Roser, 169 Ky. 198, 183 S. W. 479, relied upon by appellant, wherein it was held that a city has a right to limit the number of licenses, it will be observed that it was decided at a time when there was no State control act. The above case was based on Schweirman v. Town of Highland Park, 130 Ky. 537, 113 S. W. 507, which likewise was at a time before there was a State control act, and when we had a statutory provision placing the granting of licenses under the exclusive control of the Board of Trustees.

Appellant cites also Dunn v. Central City, 285 Ky. 482, 148 S. W. 2d 347, in which case we did not decide the question in point. However, the Kentucky Legislature in 1938 first passed an alcoholic beverage control law which, as amended, includes chapters 241, 242, 243, and 244 of KRS. This is the general law and establishes a very definite legislative policy, with a comprehensive and detailed plan.

In Kentucky Alcoholic Beverage Control Board v. Klein, 301 Ky. 757, 192 S. W. 2d 733, 737, we said:

"These four chapters (241, 242, 243 and 244 of KRS) constitute a comprehensive law on the subject. * * * As pointed out in Ziffrin, Inc., v. Reeves, 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128, the Kentucky Alcoholic Beverage Control Act is a comprehensive measure and provides for the rigid regulation of the liquor business. It sets forth in broad outlines the legislative policies for controlling the traffic, and necessarily delegates the details to administrative agencies (A. B. C. Board)."

This act creates a Department of Alcoholic Control as an agency of the State and invests that agency with very definite powers and duties in the administration of the act and regulation of the traffic. It will also be observed, and must not be overlooked, that in the act provision is made for appointment of city administrators in cities of first, second and third classes. KRS 241.190 sets out the functions of city administrators which shall be the same with respect to city licenses and regulations as the function of the Board with re-

spect to state licenses and regulations, with the exception that city administrators' regulations shall not be less stringent than those of the Board. But this section significantly provides that no regulation of a city administrator shall become effective until it has been approved by the Board, thus subjecting the city administrators' regulations to approval of the Board.

It appears that this is the first time we have been called upon to pass upon this specific and exact question. We shall, therefore, observe what other states have decided. See Annotated Cases in 113 A. L. R. 1386-1392, dealing with this question, wherein it will be observed that other jurisdictions have held in substance that a general law, declaring the policy of a state as to the prohibition or regulation of the liquor traffic, supersedes all special charter rights of municipalities to license or control the traffic.

The Legislature in its discretion having chosen the Alcoholic Beverage Control Board as its agency, and having delegated to it the power to control and regulate, we conclude that it was the legislative intent that the Board has a superior right to control, and its finding that it was not bound by the regulation of the City Administrator must be upheld. Especially is this so since the Board further found that there was no proof that it had ever, pursuant to KRS 241.190, approved such regulation of the City Administrator. Yet, more especially is this so since on February 7, 1947, the Board in its regulation provided:

"Any and all regulations in conflict herewith are rescinded to the extent of such conflict."

This leads us then to the question of whether or not the ruling of the Board is supported by any substantial evidence. If so, it is our duty to uphold. As stated above, there was a rather exhaustive hearing before the Board. It is unnecessary to go into detail concerning the facts presented therein. We conclude that not only is there some substantial evidence but considerable evidence in support of the Board's finding.

Wherefore, the judgment is affirmed.