Nicholas A. IACOBUCCI, d/b/a Talk of the Town, et al., Plaintiffs-Appellants,

v.

CITY OF NEWPORT, KENTUCKY, et al., Defendants-Appellees.

No. 83–5471.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 24, 1984.

Decided March 20, 1986.

Rehearing and Rehearing En Banc Denied May 9, 1986.

Andrew B. Dennison (argued), Batavia, Ohio, Richard Slukich, Covington, Ky., for plaintiffs-appellants.

James Parsons (argued), Newport, Ky., Bill G. Wilder, Florence, Ky., for defendants-appellees.

Before KEITH and MARTIN, Circuit Judges, and POTTER, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

This appeal challenges the constitutionality of two ordinances of the City of Newport, Kentucky. Ordinance 0–82–85 prohibits nude or nearly nude dancing in establishments selling liquor by the drink, and provides for both criminal and civil sanctions. The second ordinance, 0–82–56, requires certain employees of such establishments to register with the Newport police department, to be fingerprinted, photographed, and to procure an identification card. The appellants are managing agents of retail liquor establishments which provide live entertainment including nude and nearly nude dancing. They claim that the ordinances deprive them of their constitutional rights in violation of 42 U.S.C. § 1983, and seek a declaratory judgment and permanent injunctive relief against enforcement of the ordinances.

The fingerprinting ordinance, 0–82–56, provides in pertinent part:

1. Any person employed in any capacity in any establishment or place of business, except as hereinafter provided, where liquor or beer is sold or dispensed by the drink as defined in both the Kentucky Revised Statutes and the Newport City Ordinances, shall register in a book of registration to be kept by the Newport Police Department, and is hereby required to be fingerprinted or photographed by the Police Department of the City of Newport within five (5) days from the time of his or her employment. No such person shall fail to register, be fingerprinted or photographed.

2. No employer, whether a person, firm or corporation, shall allow any person to remain in such employment longer than five (5) days unless within such five (5) day period, the employee shall have registered and shall have been fingerprinted and photographed.

3. The registrants are required to have in their possession the identification cards issued by the Newport Police Department on their persons during their hours of employment in establishments selling or dispensing liquor or beer by the drink.[1]

Later sections exempt persons whose "primary function is the service of food." The penalty for violation of this ordinance is a fine of not less than twenty-five nor more than five hundred dollars, which can be assessed against both the employee and employer.

The proprietors in this case claim that the fingerprinting ordinance infringes upon their rights under the first, ninth, and fourteenth amendments. They contend that their right of privacy and right of association are specifically threatened by this enactment, citing *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). We do not believe that any fundamental constitutional rights are implicated by this ordinance. Because the ordinance bears a rational relationship to a legitimate

---

* The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

1. The complete text of both Ordinance 0–82–56 and 0–82–85 is contained in the attached Appendix.

governmental interest, we view it as a proper exercise of the City's police power. *People v. Stuller,* 10 Cal.App.3d 582, 89 Cal.Rptr. 158 (1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1205, 28 L.Ed.2d 327 (1971); *Sibert v. Dep't of Alcoholic Beverage Control,* 169 Cal.App.2d 563, 337 P.2d 882 (1959); *Friedman v. Valentine,* 177 Misc. 437, 30 N.Y.S.2d 891 (Sup.Ct.1941), *aff'd,* 266 A.D. 561, 42 N.Y.S.2d 593 (1943).

Newport's fingerprinting ordinance does not contain a statement of its purpose. The district judge discussed Newport's "tarnished image" and concluded that correcting this image constituted a rational basis for the ordinance. The City asserts that the ordinance would facilitate enforcement of various state laws regulating retail liquor establishments. While a specific statement of the purpose of the ordinance should have been included in its text, fingerprints and photographs of those serving alcohol will clearly further compliance with the Kentucky statute prohibiting minors and convicted felons [2] from serving alcohol in any retail establishment, K.R.S. § 244.-090. Newport's notorious crime problems intensify the necessity of such compliance; a remand for a statement to this effect is therefore not required. *See, e.g., Friedman v. Valentine,* 30 N.Y.S.2d at 894 ("That an unsupervised cabaret offers a tempting field for abuses and crimes is almost axiomatic.")

Courts have consistently upheld the constitutionality of similar ordinances as valid implementations of the police power. In *People v. Stuller,* 10 Cal.App.3d 582, 89 Cal.Rptr. 158 (1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1205, 28 L.Ed.2d 327 (1971), a bartender's fingerprints taken pursuant to a virtually identical ordinance were admitted as evidence in his trial for rape. In rejecting the defendant's claim that the ordinance authorized an unconstitutional invasion of his privacy, the *Stuller* court noted the minimal nature of the intrusion

involved in registration and fingerprinting, and listed the numerous non-criminal situations in which fingerprints are required. 89 Cal.Rptr. at 166–67.

A New York Police Commission regulation requiring the registration and fingerprinting of all cabaret employees was upheld in *Friedman v. Valentine,* 177 Misc. 437, 30 N.Y.S.2d 891 (Sup.Ct.1941), *aff'd,* 266 A.D. 561, 42 N.Y.S.2d 593 (1943). The court held that the regulation was justified by conditions in the cabaret industry, stating "[n]o one can seriously argue against the conclusion that persons employed in cabarets and by their concessionnaires have especially favorable opportunities to victimize patrons of such establishments." 30 N.Y.S.2d at 895. *Friedman* was reaffirmed in *Simone v. Kennedy,* 26 Misc.2d 748, 212 N.Y.S.2d 838, 840 (N.Y. Sup.Ct.1961), in which the court approved the police department's practice of charging fees for the identification cards required by the ordinance.

The *Friedman* reasoning helped pave the way for a federal case on fingerprinting requirements, *Thom v. N.Y. Stock Exchange,* 306 F.Supp. 1002 (S.D.N.Y.1969), *aff'd sub nom. Miller v. N.Y. Stock Exchange,* 425 F.2d 1074 (2d Cir.), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). *Thom* upheld the constitutionality of a New York state statute requiring fingerprinting of all employees of member firms of national security exchanges registered with the Securities and Exchange Commission and all employees of affiliated cleaning corporations. The court rejected the plaintiff's privacy argument, observing that fingerprinting "is only a means of verifying the required information as to the existence or nonexistence of a prior criminal record ... [t]he actual inconvenience is minor; the claimed indignity, nonexistent; detention, there is none; nor unlawful search; nor unlawful seizure."

---

**2.** As the result of a 1978 amendment, section 244.090(1)(a) prohibits a liquor licensee from employing any person who "has been convicted of any felony, misdemeanor or offense directly or indirectly attributable to the use of intoxicating liquors, within the last two (2) years." Additionally, minors, aliens, and those who have violated liquor laws are not eligible for employment. K.R.S. § 244.090(1)(b)–(d).

*Id.* at 1009. *See also id.* at 1007 n. 17 (citing federal and state cases upholding fingerprinting requirements); *Davis v. Mississippi,* 394 U.S. 721, 727–28, 89 S.Ct. 1394, 1397–98, 22 L.Ed.2d 676 (1969) (recognizing the minimal intrusiveness of the fingerprinting process).

The Durham, North Carolina City Council adopted a similar, but more extensive, ordinance regulating massage parlors. The ordinance requires all applicants for licenses for massage businesses to be fingerprinted and photographed, and to submit to medical examinations. The constitutionality of this ordinance was upheld in *Brown v. Brannon,* 399 F.Supp. 133, 138–39 (M.D.N.C.1975), *aff'd,* 535 F.2d 1249 (4th Cir.1976). The *Brown* court concluded that the ordinance was rationally related to a valid state interest: "[T]he photographing and fingerprinting obviously serve to aid police and administrative personnel in identifying and investigating potential applicants for a license.... The records also would aid in the efforts of North Carolina relating to offenses against public morality and decency." *Id.* at 139.

Fingerprints are required by states and cities in many noncriminal situations, most often in connection with applications for licenses or permits. *See, e.g.,* Ky., Sup. Ct.R. 2.020(2) (requiring fingerprints of applicants for the bar); Louisville, Ky., Code §§ 73.22, 112.15(2) (requiring photographs and fingerprints of applicants for licenses for numerous occupations, including auctioneers, fortune tellers, and collecting agencies); Louisville, Ky., Code § 114.-049(A)–(D) (requiring fingerprinting of all applicants for retail liquor licenses and authorizing the Director of Safety to require fingerprinting of all "stockholders, agents, or employees of a licensed corporation" if he has reasonable grounds to believe the person has a prior criminal record.)

Newport's fingerprinting ordinance serves corresponding goals. Because no fundamental right is threatened by the ordinance, it will be upheld if it is reasonable, not arbitrary, and bears a rational relationship to a permissible state objective. *Vil-*

*lage of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). We believe that the ordinance legitimately furthers Kentucky's objective of screening employees of retail liquor establishments, and advances the city's goal of eliminating crime. *Cf. International Soc. for Krishna Consciousness v. City of Houston,* 689 F.2d 541, 556–57 (5th Cir.1982) (upholding city ordinance requiring religious solicitors to comply with registration and financial disclosure requirements, and to carry identification cards); *Hamilton v. New Jersey Real Estate Comm'n,* 117 N.J.Super. 345, 284 A.2d 564 (1971) (upholding Real Estate Commission regulation requiring all applicants for salesman, broker-salesman, or broker's licenses to be fingerprinted); *Playboy Club of New York, Inc. v. O'Connell,* 18 A.D.2d 339, 239 N.Y.S.2d 262 (1963), *aff'd,* 14 N.Y.2d 503, 248 N.Y.S.2d 226, 197 N.E.2d 662 (1964) (upholding regulation of department of licenses that female cabaret employees are prohibited from mingling with patrons). *Compare Wulp v. Corcoran,* 454 F.2d 826, 834 (1st Cir.1972) (ordinance requiring newspaper vendors to obtain a license and to wear a badge held unconstitutional because printed materials distributed anonymously "have played an important role in the progress of mankind".); *Strasser v. Doorley,* 432 F.2d 567 (1st Cir.1970) (same). *Wulp* and *Strasser* involved undisputed first amendment concerns; no comparable governmental interest is threatened by this ordinance.

Judicial authority is therefore in agreement that requiring fingerprints of employees of retail liquor establishments bears a rational relationship to the legitimate goal of crime prevention. The operators of the Newport establishments present essentially the same arguments rejected in these earlier cases. Whatever the outer limits of the right to privacy, clearly it cannot be extended to apply to a procedure the Supreme Court regards as only minimally intrusive. Enhanced protection has been held to apply only to such fundamental decisions as contraception, *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and family living arrangements,

*Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Fingerprints and photographs have not been held to merit the same level of constitutional concern.

We also reject the proprietors' argument that the fingerprinting ordinance interferes with their freedom to pursue the occupation of their choice. Although government may not unreasonably interfere with a citizen's pursuit of his occupation, *Wilkerson v. Johnson,* 699 F.2d 325, 327–28 (6th Cir. 1983), this fingerprinting ordinance places no categorical restrictions on those who may be employed in retail liquor establishments. Compliance with the ordinance is not a sufficiently serious impediment to the pursuit of employment in a retail liquor establishment to merit constitutional protection. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) (invalidating a civil service rule barring all non-citizens from employment in the federal civil service system). We therefore reject the proprietors' claim, and affirm the lower court's ruling as to ordinance 0–82–56.[3]

■ The challenge to Newport's nude dancing ordinance raises many different and complex legal issues. After reviewing the arguments presented in the parties' briefs and at oral argument, this Court determined that the district court and the parties had proceeded on the basis that the case involved a conflict between the twenty-first amendment and other constitutional rights and therefore failed to discuss the questions of delegation, preemption, or the application of the Supreme Court's reasoning in *New York State Liquor Auth. v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) to the facts of this case.

The parties were therefore directed to file supplemental briefs on these issues.

Newport's nude dancing ordinance is almost identical to the New York State statute held constitutional in *Bellanca.* The district court stated that the nude dancing ordinance is constitutional because it "is squarely within the doctrine of *Bellanca.*" Because we do not agree that the doctrine of *Bellanca* applies in this case, we need not address the question of delegation of twenty-first amendment authority from the state to the city.

The rationale of the *Bellanca* decision is that, "[t]he State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." *Bellanca,* 452 U.S. at 717, 101 S.Ct. at 2601. Given the express statutory authorization for cities to conduct popular elections on the question of local prohibition, *see* K.R.S. §§ 242.010–242.990, as required by the Kentucky Constitution,[4] it is very doubtful that a city in Kentucky may *by ordinance* "ban the sale of alcoholic beverages entirely." Therefore, even assuming that Kentucky has, in some metaphysical sense, delegated its twenty-first amendment power to the City of Newport, the ordinance does not fall within the *Bellanca* doctrine. A city cannot exercise in part a power it does not hold in full, and the citizens of the city have not chosen to exercise the power granted to them by K.R.S. §§ 242.010–242.990 and § 61 of the Kentucky Constitution.

■ Because we believe that *Bellanca's* rationale does not apply to the facts of the instant case, we do not reach the state law question of delegation of authority from

---

3. Newport's fingerprinting ordinance is supplementary to the State's regulatory scheme, and thus is within the City's regulatory power. *City of Bowling Green v. Gasoline Marketers, Inc.,* 539 S.W.2d 281, 284 (Ky.1976).

4. Section 61 of the Kentucky Constitution provides:

    **Provision to be made for local option on sale of liquor—Time of elections.**—The General Assembly shall, by general law, provide a

means whereby the sense of the people of any county, city, town, district or precint may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of such liquors. All elections on this question may be held on a day other than the regular election days.

the state to the city. This determination does not, however, dispose of the matter, because the city may still justify the ordinance as an appropriate exercise of its police power. In *Grand Faloon Tavern, Inc. v. Wicker*, 670 F.2d 943, 944 (11th Cir.), *cert. denied*, 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982), the Eleventh Circuit observed:

> We initially note that the Supreme Court in *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), upheld a similar state statute on the basis of authority conferred under the Twenty-first Amendment. *Bellanca* does not, however, resolve the issue before us because Cocoa Beach, a municipality lacking any delegated regulatory authority under the Twenty-first Amendment, is required to justify the ordinance solely as a legitimate exercise of its police power.

*See also Krueger v. City of Pensacola*, 759 F.2d 851, 854–55 (11th Cir.1985) ("Because Florida has not delegated its regulatory authority to municipalities, however, Pensacola must justify its ordinance under the stricter standard typically used to review an infringement on a protected liberty interest justified solely under the government's police power.").

While the exact amount of proof necessary to satisfy this "stricter standard" is an issue properly left to the discretion of the district court, we note that no substantive evidence concerning the government's justifications for the ordinance was presented below. We agree with the Eleventh Circuit that "[w]here such fundamental interests as free speech are at issue ... we require more than simply an articulation of some legitimate interest that the city could have had." *Krueger*, 759 F.2d at 855. Specifically, no evidence was presented relating the crime rate in bars in which topless dancing occurs to the crime rate in bars lacking such entertainment. The preamble to the ordinance, standing alone, is insufficient evidence of the motivating factors in its passage. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 69–73, 101 S.Ct. 2176, 2183–2185, 68 L.Ed.2d

671 (1981); *City of Miami Springs v. J.J.T., Inc.*, 437 So.2d 200, 204 (Fla.Dist.Ct. App.1983).

Of course, a municipality may not exercise its police power when local authority over the subject has been preempted by the state's exercise of its superior power to regulate the alcoholic beverage industry. *See, e.g., City of Bowling Green v. Gasoline Marketers, Inc.*, 539 S.W.2d 281, 284 (Ky.1976); *City of Newport v. Tye*, 335 S.W.2d 340, 342 (Ky.1960); *Commonwealth ex. rel. City of Hazard v. Day*, 287 Ky. 176, 152 S.W.2d 597 (1941); *Die Burg, Inc. v. Underhill*, 465 F.Supp. 1176, 1178 (M.D.Fla.1979). We express no view as to the resolution of this difficult issue, which was not raised below, but merely note that it must be addressed if the lower court, after hearing all the evidence, determines that the ordinance is an appropriate exercise of the city's police power.

Another issue which would arise upon such a determination is the susceptibility of the language "or simulation thereof" to an attack on vagueness grounds. Like the preemption issue, the vagueness challenge need not be addressed until a ruling on the City's police power authority is made by the court below. Clearly, however, the *Bellanca* decision is not dispositive on the issue, because a vagueness claim was not raised before the Supreme Court in that case.

■ We hold further that the ordinance does not constitute an impermissible prior restraint upon either present or future restricted expression. The appellants' argument that their zoning status would be altered if their occupational licenses were revoked does not constitute a reason to invalidate the ordinance as a prior restraint. In this case, prescreening discretion is not vested in any administrative body, as in *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), and the dangers of censorship are not present. A comparison of the dangers involved in systems of prior and subsequent restraint

is contained in *In re Halkin,* 598 F.2d 176 (D.C.Cir.1979):

> An administrative censorship scheme provides less protection for expression than a system of subsequent punishment because it permits sanctions to be imposed for failure to obtain the censor's approval, regardless of the nature of the expression. Expression may be punished in a censorship scheme upon proof of one fact—the failure to obtain prior approval. A would-be speaker thus cannot ignore the censor, for later he will be unable to defend his expression on the ground that it posed no danger and therefore the censor could not have suppressed it consistent with the First Amendment.... In contrast, under a system of subsequent punishment, the state must show in each case that the particular expression which the state seeks to punish did in fact pose an immediate threat to an interest which the state has a right to protect. *Id.* at 184 n. 15 (citations omitted).

In summary, we hold only that the district court's determination that Newport's ordinance "falls squarely within the doctrine of *Bellanca,*" cannot stand. We remand for a determination of the city's authority under the police power, and, if necessary, analysis of the preemption and vagueness issues. We affirm as to the fingerprinting ordinance.

## APPENDIX *

### ORDINANCE NO. 0-82-85

AN ORDINANCE OF THE CITY OF NEWPORT, KENTUCKY, PROHIBITING NUDE OR NEARLY NUDE ACTIVITIES IN ESTABLISHMENTS WITH A RETAIL DRINK LIQUOR LICENSE AND/OR RETAIL CEREAL MALT BEVERAGE LIQUOR LICENSE, AND PROVIDING FOR PENALTIES FOR VIOLATION THEREOF, INCLUDING THE SUSPENSION OR REVOCATION OF THE SAID RETAIL LIQUOR DRINK LICENSE AND/OR RETAIL CEREAL MALT BEVERAGE LI-

QUOR LICENSE AND THE REVOCATION OF THE ESTABLISHMENT'S OCCUPATIONAL LICENSE.

WHEREAS, numerous business establishments with a retail drink liquor license and/or retail cereal malt beverage liquor license from the City of Newport, Kentucky, provide adult entertainment for its patrons, such as nude or nearly nude dancing; and

WHEREAS, the City Commission of the City of Newport, Kentucky, determines such conduct or activities as injurious to the citizens of the City of Newport, Kentucky; and

WHEREAS, .the City Commission of the City of Newport, Kentucky, believes that this Ordinance is necessary:

1. To protect property values;

2. To prevent blight and the deterioration of the City's neighborhoods;

3. To promote a climate conducive to a return of residences and businesses to the City's neighborhoods;

4. To enhance the quality of life within the City;

5. To presume [sic] and stabilize the City's neighborhoods; and

6. To decrease the incidence of crime, disorderly conduct and juvenile delinquency, now Therefore,

BE IT ORDAINED BY THE CITY OF NEWPORT, KENTUCKY:

### SECTION I

#### DEFINITIONS:

A. "Business Establishments"—Shall mean a business within the City of Newport, Kentucky, where liquor, beer and/or wine is sold for consumption on the premises pursuant to a retail drink liquor license and/or retail cereal malt beverage liquor license that has been issued by the City of Newport, Kentucky.

B. "Liquor Administrator"—Shall mean the duly appointed Alcoholic Beverage Con-

---

* Ordinances appear as filed by the parties in the    Joint Appendix submitted on appeal.

trol Administrator of the City of Newport, Kentucky.

C. "Licensee"—Shall mean any person to whom a retail drink liquor license or a retail cereal malt beverage liquor license has been issued by the City of Newport, Kentucky, including the officers and agents of the licensee.

D. "License"—Shall mean a retail drink liquor license or a retail cereal malt beverge liquor license issued by the City of Newport, Kentucky.

E. "Occupation License"—Shall mean the occupational license issued for the business establishment pursuant to the City of Newport, Kentucky's Occupational License Ordinance.

F. "Person"—Shall mean a human being, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a government or a governmental authority.

G. "Premises"—Shall mean the land and building in and upon which any business establishment regulated by alcoholic beverage statutes is carried on.

H. "Retail Licensee"—Shall mean any licensee including its officer and agents, who sells at retail any alcoholic beverage for the sale of which an occupational license is required.

## SECTION II

It shall be unlawful for and a person is guilty of performing nude or nearly nude activity when that person appears on a business establishment's premises in such a manner or attire as to expose to view any portion of the pubic area, anus, vulva or genitals, or any simulation thereof, or when any female appears on a business establishment's premises in such manner or attire as to expose to view portion of the breast referred to as the areola, nipple, or simulation thereof.

## SECTION III

A license or retail licensee is guilty of permitting nude or nearly nude activity when having control of the business establishment's premises which it knows or has reasonable cause to know, is being used by any person to appear on the premises in such manner or attire as to expose to view portions of the public area, anus, vulva or genitals, or any simulation thereof; or used by any female to appear on the premises in such manner or attire as to expose to view any portion of the breast referred to as the areola, nipple, or any simulation thereof, it permits such activity or fails to make reasonable and timely effort to halt or abate such activity or use.

## SECTION IV

A. Performing nude or nearly nude activities as set forth in Section II or permitting such activities as set forth in Section III is a Violation and punishment shall be fixed as set forth in the Kentucky Revised Statutes.

B. The second violation of Section II or Section III above within a twelve month period shall constitute a Class B Misdemeanor with punishment as set forth in the Kentucky Revised Statutes.

C. Three or more violations of Section II or Section III within a twelve month period shall constitute a Class A Misdemeanor with punishment as set forth in the Kentucky Revised Statutes.

## SECTION V

A. In the event that a violation of Section II and/or III of this Ordinance occurs, the City of Newport Liquor Administrator shall forthwith conduct a hearing pursuant to KRS 243.520 (in conjunction with 241.160 and 241.190), to determine whether the liquor license, at whose business establishment the activity prohibited by this Ordinance occurred, shall have his/her or its license suspended or revoked.

B. In the event three or more violations of Section II and/or III above occur at a business establishment within a twelve month period, the Liquor Administrator, after a hearing, shall revoke the said retail drink license or retail cereal malt beverage liquor license or both.

**SECTION VI**

A. In the event that a violation of Section II or II above occurs, the City Manager shall prefer charges against the retail license pursuant to the Newport Code of Ordinances, sections 26–45 et seq. and after notice, a hearing etc. held by the Board of Commissioners, the occupational license shall either be revoked or suspended.

B. In the event that three or more violations of Section II or III above occur at a business establishment within a twelve month period, after notice and hearing etc. pursuant to the Newport Code of Ordinances sections 26–45 et seq., the Board of Commissioners shall revoke the occupational license of the retail licensee.

**SECTION VII**

If any provision of this ordinance, or the application thereof, is held invalid, such invalidity shall not affect other provisions or other applications of this Ordinance which can be given effect without the invalid provisions or applications, and to this end, the provisions of the Ordinance are declared to be severable.

**SECTION VIII**

This Ordinance shall be in full force and effect on October 1, 1982.

PUBLISHED: In Full in the Campbell County Recorder, the 13 day of September, 1982.

**COMMISSIONERS ORDINANCE
NO. 0–82–56**

AN ORDINANCE PROVIDING FOR THE REGISTRATION, PHOTOGRAPHING AND FINGER PRINTING OF ALL EMPLOYEES OF ESTABLISHMENTS THAT SELL LIQUOR OR BEER BY THE DRINK WITHIN THE CITY OF NEWPORT, KENTUCKY, AND PROVIDING PENALTIES FOR THE VIOLATION THEREOF.

BE IT ORDAINED BY THE CITY OF NEWPORT, KENTUCKY:

**SECTION I**

REGISTRATION, PHOTOGRAPHING AND FINGER PRINTING OF EMPLOYEES

1. Any person employed in any capacity in any establishment or place of business, except as hereinafter provided, where liquor or beer is sold or dispensed by the drink as defined in both the Kentucky Revised Statutes in the Newport City Ordinance, shall register in a book of registration to be kept by the Newport Police Department, and is hereby required to be finger printed and photographed by the Police Department of the City of Newport within five (5) days from the time of his or her employment. No such person shall fail to register, be finger printed and photographed.

2. No employer, whether a person, firm or corporation, shall allow any person to remain in such employment longer than five (5) days unless within such five (5) day period, the employee shall have registered and shall have been finger printed and photographed.

3. The registrants are required to have in their possession the identification cards issued by the Newport Police Department on their persons during their hours of employment in establishments selling or dispensing liquor or beer by the drink.

4. The City of Newport shall require a payment of Ten ($10.00) Dollars of each person registered, which charge shall be sufficient to cover the cost involved in the procedure, including the cost of the identification card furnished to the registrants.

5. In those businesses having a liquor or beer by the drink license where another business is the principal user of the location, including but not limited to restaurants and hotels, only those persons who are directly engaged in that portion of that business which sell liquor or beer by the drink are subject to this section.

6. This registration procedure shall not apply to waiters and waitresses which [sic] primary function is the service of food.

7. Any establishment having a liquor or beer by the drink license that employs a contract cleaning service or other maintenance service to work in their establishment after closing hours, shall require those persons so employed by the contractor to wear an I.D. card while working in that portion of the establishment that is directly involved in the sale of liquor or beer by the drink. This special I.D. shall only list the persons [sic] name, address, and date of birth.

8. Any person, firm or corporation convicted of violating this section shall be fined not less than Twenty-five ($25.00) Dollars, no more than Five Hundred ($500.00) Dollars in the discretion of the Campbell District Court.

### SECTION II

Any section or part of a section or any provision of this Ordinance which is declared by a Court of appropriate jurisdiction, for any reason, to be invalid, such decision shall not effect or invalidate the remainder of this Ordinance.

### SECTION III

This Ordinance shall be signed by the Mayor, attested by the City Clerk, recorded, published, and effective at the time of publication.

PUBLISHED: In full in the Campbell County Recorder, the 10th day of June, 1982.

POTTER, District Judge, concurring in part and dissenting in part.

I concur in the opinion of the majority as to the affirmance of the lower court's judgment relative to the fingerprinting ordinance. I respectfully dissent, however, to that portion of the majority decision holding that Ordinance No. 0–82–85 prohibiting nude or nearly nude activity does not come under the rationale of *New York State Liquor Auth. v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981). The majority concludes that the ordinance must stand or fall under the city's authority un-

der the police power and has remanded for such a determination.

Ordinance No. 0–82–85 provides in pertinent part as follows:

It shall be unlawful for and a person is guilty of performing nude or nearly nude activity when that person appears on a business establishment's premises in such a manner or attire as to expose to view any portion of the public area, anus, vulva or genitals, or any simulation thereof, or when any female appears on a business establishment's premises in such manner or attire as to expose to view any portion of the breast referred to as the areola, nipple, or any simulation thereof, ...

The preamble to Ordinance No. 0–82–85 sets out the legislative purpose of the ordinance. It states that nude or nearly nude dancing in business establishments selling liquor by the drink is "injurious" to the citizens of Newport, and that the ordinance is necessary to protect property values, prevent blight and deterioration of the City's neighborhoods, promote a climate conducive to a return of residences and businesses to the City's neighborhoods, enhance the quality of life within the City, stablize the City's neighborhoods, and to decrease the incidence of crime, disorderly conduct and juvenile delinquency.

The ordinance imposes civil as well as criminal sanctions. A proprietor who violates the ordinance may have both his liquor license and occupational license revoked.

The parties in the court below stipulated essentially the following:

A proprietor's liquor license may not be revoked without a notice and hearing. The City of Newport Liquor Administrator conducts a hearing to determine whether to suspend or revoke the license. The proprietor has the right to present evidence, be represented by counsel, and cross-examine witnesses. The ordinance is silent regarding the standards that the administrator is to use in determining whether to revoke the license for a first violation or second violation within a twelve-month period;

revocation for a third violation within a twelve-month period is mandatory. Appellees state that Newport officials have interpreted the ordinance in such a way that the administrator may not find a "violation" of the ordinance unless the proprietor has been convicted of the violation.

A proprietor, within ten days of the Administrator's decision, may notice an appeal to the Kentucky State Board of Liquor Control. The hearing before that Board is *de novo*. Although a proprietor may appeal an adverse determination by the Board, pending appeal he may not conduct a liquor business.

Appeal from the Board's decision is to the Franklin Circuit Court. State law requires that the appeal be expedited, but the parties agree that the period from filing the notice of appeal to rendering of the decision is six months.

Notice and a hearing also are required in order to revoke a proprietor's occupational license. The Newport Board of Commissioners determines whether to suspend or revoke the license. A proprietor, within thirty days, may appeal an adverse decision to the Campbell Circuit Court. That hearing is *de novo*. Pending review, the Commissioner's decision is effective unless stayed by the reviewing court.

As to Ordinance No. 0–82–85, appellants present this statement of issues:

DID THE DISTRICT COURT PROPERLY DETERMINE THE ISSUE OF THE CLAIMED CONSTITUTIONAL REPUGNANCY OF ORDINANCE NO. 0–82–85 OF THE CITY OF NEWPORT, KENTUCKY, THE NUDE DANCING BAN ORDINANCE, IN THE COURT'S CONCLUSION THAT THE ORDINANCE DID NOT VIOLATE THE PRIVILEGES GRANTED BY THE FIRST AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES AS TO THE VAGUENESS AND OVERBREADTH, FACIALLY AND AS APPLIED, OF THE ORDINANCE, ITS IMPOSITION OF AN IMPERMISSIBLE PRIOR RESTRAINT UPON PRESENT AND FUTURE PROTECTED EXPRESSION, AND ITS FAILURE TO POSSESS PROCEDURAL SAFEGUARDS?

As is stated in the majority opinion, the trial court held that the nude dancing ordinance is practically a copy of the statute upheld in *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) and it is "squarely within the doctrine of *Bellanca, supra*, and must be upheld on that basis."

On appeal, the issues quoted above were briefed, and the appeal came on for oral argument. As stated in the majority opinion, at the hearing it was observed that the district court and the parties proceeded on the basis that the case involved a conflict between the Twenty-first Amendment and other constitutional rights and therefore failed to discuss the question of delegation of state authority.

Since the issue of delegation had not been discussed, e.g., see *Grand Faloon Tavern, Inc. v. Wicker*, 670 F.2d 943 (11th Cir.1982), *cert. denied*, 459 U.S. 859, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982), the panel presented to the parties the following issues to be briefed and submitted to the Court:

(1) Does a valid delegation of twenty-first amendment authority from the state to the locality require only that the state permit localities to regulate broad aspects of the alcoholic beverage industry? Or, rather, does a valid delgation of twenty-first amendment authority from the state to the locality require that the state affirmatively and explicitly enable localities to regulate specific, well-defined aspects of the alcoholic beverage industry? Whichever principle is accepted, how does it apply to the Newport nude dancing ordinance?

(2) Does a state preempt local regulation of nude dancing in establishments serving alcoholic beverages by refusing itself to regulate nude dancing in those establishments while regulating other activities that one might put in the same

category as nude dancing? Or, rather, does a state preempt local regulation of nude dancing in establishments serving alcoholic beverages only by explicitly and affirmatively prohibiting localities from regulating nude dancing in those establishments?

Whichever principle is accepted, how does it apply to the Newport nude dancing ordinance?

(3) Aside from the abstract questions of delegation and preemption, the parties should note that the rationale of the *Bellanca* decision appears to be: "The State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." 452 U.S. at 717 [101 S.Ct. at 260]. Given the express statutory authority for cities to conduct popular elections on the question of local prohibition; *see* K.R.S. §§ 242.-010–242.990, may a city in Kentucky *by ordinance* "ban the sale of alcoholic beverages entirely?"

If not, does the Newport ordinance come within the doctrine of *Bellanca?*

In discussing these issues, the parties should discuss the relevance, if any, of the following stipulations entered into by the parties:

A. KRS 241.190 imposes upon the City of Newport Liquor Administrator the same duties and powers with respect to city liquor licenses and the regulation thereof as possessed by the Kentucky State Board of Liquor Control as to state liquor licenses and regulations.

B. The City of Newport Liquor Administrator is vested with the right to revoke a city liquor license based upon a finding of a violation of state law, state regulations adopted by the Kentucky State Board of Liquor Control, upon the City of Newport Liquor Administrator's regulations which have been adopted by the Kentucky State Board of Liquor Control, and other city ordinances or regulations, or both, including Commissioners' Ordinance No. 0–82–85.

The first issue presented by the Court for supplemental briefing was the issue of delegation of Twenty-first Amendment authority from the state to the city. The majority finds that the city can not ban the sale of liquor by ordinance but only by popular election, and, therefore, *Bellanca* is not applicable. (The Court's issue 3.) The majority, therefore, concludes that the issue of delegation need not be addressed.

The majority concludes that the City cannot exercise "... in part a power it does not hold in full." I find that the majority reads *Bellanca* much too narrowly. The thrust and the "doctrine" of *Bellanca* should not be limited to the one phrase "[t]he State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." The trial court did not base its opinion on this limited basis.

*Bellanca,* following *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), recognized that under the Twenty-first Amendment a state has broad power to regulate the times, places, and circumstances under which liquor may be sold. *Bellanca,* again citing *LaRue,* referred to banning nude dancing as part of a liquor license control program. *LaRue* stated the following:

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." *LaRue* at p. 114, 93 S.Ct. at p. 395.

Of course, the ordinance does not ban the sale of liquor in a precinct or in the city contrary to the provisions of Section 61 of the Kentucky Constitution and K.R.S. 242.-010–242.990. The ordinance for one of its remedies provides for the revocation of the city license for an offending establishment. The City of Newport Liquor Administrator

is already vested with the right to revoke a city liquor license for certain violations including city ordinances and regulations. Under the majority holding, a question arises whether or not even the state may revoke a license if it applies the relaxed standard of *LaRue, Bellanca* and the Twenty-first Amendment.

I do not believe that the city and possibly the state, because of the existence of the Kentucky Constitution provision and the local option statutes, is restricted where constitutional rights are asserted solely to the exercise of the police power to regulate the liquor industry.

Having considered the Court's issue 3, I now consider the remaining Court's issues.

The Court's issue 1 quoted above presents the question of whether or not there has been a valid delegation of Twenty-first Amendment authority from the State to the City of Newport. That issue is further refined as to the validity of a delegation of broad aspects of the alcoholic beverage industry or a requirement of state affirmative and explicit delegation. The majority opinion in its view felt that it need not reach this issue. I do reach this issue and find that whether or not there is a delegation is a matter of state law. The language of the Twenty-first Amendment indicates that it is a state matter and there is no overriding national issue involved in the regulation of the alcoholic beverage industry. The Twenty-first Amendment, in pertinent part, is as follows:

> Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

See also, *Die Burg, Inc. v. Underhill,* 465 F.Supp. 1176 (M.D.Fla.1979), and *Felix v. Young,* 536 F.2d 1126 (6th Cir.1976) and footnote 11 at page 1132, as follows:

> 11. In *Tally v. City of Detroit,* 54 Mich. App. 328, 220 N.W.2d 778 (1974), *aff'd on rehearing* 58 Mich.App. 261, 227 N.W.2d 214 (1975), the Michigan Court of Appeals affirmed the facial validity of Detroit Ordinance No. 744–G in the face of a First Amendment challenge to the licensing requirements for Group "D" Cabarets. Relying on *California v. LaRue,* [sic] the Michigan Court found that the City derived its power of home rule from the state and that the ordinance in question was a reasonable exercise of Detroit's Twenty-first Amendment authority to regulate local liquor traffic. *Id.,* 220 N.W.2d at 783. *See also Crownover v. Musick,* 9 Cal.3d 405, 107 Cal. Rptr. 681, 509 P.2d 497 (1973); *Manos v. City of Green Bay,* 372 F.Supp. 40 (E.D. Wis.1974).

The next issue for consideration then is, has there been a sufficient delegation of authority by the State to the City to bring the action of city council and the ordinance in question within the doctrine of *Bellanca.*

Municipalities in Kentucky do not have inherent police power to regulate the alcoholic beverage industry and municipalities have only those powers expressly or impliedly conferred upon them. See *O'Brien v. Department of Alcoholic Beverage Control, et al.,* 306 Ky. 238, 206 S.W.2d 941 (1947). Based on Kentucky statutes and Kentucky state judicial opinions, I find that together the state and municipalities by authority delegated to them exercise joint control over the alcohol beverage industry. Although the City of Newport does not enjoy home rule and is a city of the second class, it does share concurrent power with the state. Thus, there is a sufficient delegation to bring the ordinance within the Twenty-first Amendment and the *Bellanca* doctrine.

While opinions are not precise as to specific delegation, there are precedents which permit Twenty-first Amendment regulation under general delegation. See, *Die Burg, Inc. v. Underhill, supra; Manos v. City of Green Bay,* 372 F.Supp. 40 (E.D.Wis.1974); *Del Percio v. City of Daytona Beach,* 449 So.2d 323 (Fla.App. 5 Dist.1984).

As to specific statutes involved, KRS 243.070 provides in part as follows:

The city legislative body of any city ... may impose license fees for the privilege of manufacturing and trafficking in alcoholic beverages.

KRS 241.190 in pertinent part is as follows:

The functions of each city administrator shall be the same with respect to city licenses and regulations, as the functions of the board with respect to state licenses and regulations, except that no regulation adopted by a city administrator may be less stringent than the statutes relating to alcoholic beverage control, or than the regulations of the board.

KRS 243.370 in pertinent part states:

If an applicant proposes to do business in a county or city in which a county or city license is required for the manufacture, sale or transportation of alcoholic beverages, he shall be ineligible to apply for a state license unless his application for a county or city license has first been approved by the county administrator or city administrator.

KRS 243.450 in pertinent part reads:

(1) A license ... shall be refused:

(a) If the applicant or the premises for which the license is sought do not comply fully with all alcoholic beverage control statutes, the regulations of the board, all ordinances relative to the regulation of the manufacture, sale and transportation of alcoholic beverages, and all regulations of a city administrator or county administrator;

And KRS 243.490 reads in pertinent part as follows:

(1) Any license ... may be revoked by the state board if the licensee shall have violated ... any rules or regulations of any local alcoholic beverage authority or any similar body heretofore in existence....

Other state statutes regulate the issuing, suspension and revocation of licenses. See KRS 243.100, KRS 243.220 and KRS 243.500.

The Kentucky legislature has also enacted certain state statutes which are directed to specific conduct, i.e. KRS 244.120 in pertinent part states:

(1) No person licensed to sell alcoholic beverages at retail shall cause, suffer, or permit the licensed premises to be disorderly.

(2) Acts which constitute disorderly premises consist of permitting patrons to cause public inconvenience, annoyance or alarm, or wantonly creating a risk through:

\* \* \* \* \* \*

(d) Creating a hazardous or physically offensive condition by any act that serves no legitimate purpose.

See also, KRS 243.500(7).

Kentucky State judicial authorities have interpreted the above statutes and indicate a broad delegation of authority to cities. In *Deckert v. Levy*, 308 Ky. 67, 213 S.W.2d 431 (1948), suit was brought by a state licensee to compel the board of commissioners of the city to issue him a retail beer license. The issue was whether or not a city of the second class could limit by ordinance the number of retail beer licenses in the absence of regulations of the State Alcoholic Beverage Control Board to that effect. The court held that the city had the authority to deny the license and stated the following:

The power of the state to control and regulate the traffic in intoxicating liquor may be delegated or conferred by the Legislature upon municipalities, either in whole or in part. Even in the absence of a specific delegation, authority exists as an incident to the general powers of a city and its exercise is justified by the general welfare provisions of municipal charters, particularly in relation to the issuance of licenses and limitation on the number, *Schwierman v. Town of Highland Park*, 130 Ky. 537, 113 S.W. 507; *Christian Moerlein Brewing Co. v. Roser*, 169 Ky. 198, 183 S.W. 479.

It is usual for the state to share responsibility with its subordinate units of government, particularly with cities and towns, by extending concurrent or coordinate powers. Where there is a conflict

in the authority or in its exercise, the state's action has supremacy. This is recognized in the *Klein* and *O'Brien* cases above cited.

General authority of cities, of the second class to regulate intoxicating liquor may be found in the provision of their charters granting power to pass and enforce ordinances "not inconsistent with the law, as are expedient in maintaining the peace, good government, health and welfare of the city." KRS 84.150. Also, power to license business generally. KRS 84.190. Specific authority for the issuance of licenses for the privilege of trafficing in intoxicating liquor is given the several city legislative bodies by KRS 243.070. The only statutory limitations are (1) the licenses must correspond in their provisions to those issued by the state administrator and (2) on the amount of fees. There is no statutory limitation, either maximum or minimum, on the number of licenses which a city council or board of commissioners may authorize or issue.

The question we have here is whether there is any conflict between the use or exercise of powers delegated to the state board and its administrators as the state agency, on the one hand, and the use or exercise of the power delegated to the City of Newport by KRS 243.070 on the other.

*Deckert*, 213 S.W.2d at 433.

Thus the state, through its agency, has not limited the number of licenses for the retail of malt liquors in that City. Therefore, it can not be said that the state has moved in and exercised its superior authority; hence, there is no conflict with the ordinance which limits the number. It must prevail. The action of the State Administrator in issuing a state license or permit does not make it mandatory on the city officials to violate its ordinance.

*Deckert*, 213 S.W.2d at 434.

*Deckert* was followed by the case of the *City of Bowling Green v. Gasoline Marketers*, 539 S.W.2d 281 (Sup.Ct.Ky.1976).

The city passed an ordinance which prohibited the issuance or renewal of a beer license if the premises were used in whole or in part with the operation of any business or enterprise which had more than 50% of its gross receipts in the sale of gasoline and lubrication oil.

Licenses were denied by the city but granted by the Alcoholic Beverage Control Board. An appeal was taken by the city to the Franklin Circuit Court. That court dismissed the appeal. On appeal to the Kentucky Supreme Court, the only issue was whether the City of Bowling Green, a second class city, had authority to enact an ordinance prohibiting the issuance or renewal of retail beer licenses to gasoline stations. The court said the following at page 283:

The limitation on the issuance of licenses to appellees is by ordinance and not by regulation of the city alcoholic beverage control administrator. The contention that the ordinance is not enforceable because it was not approved by the State Alcoholic Beverage Control Board, pursuant to the provision of K.R.S. 241.190, is without merit.

The Court referred to the case of *Deckert* and observed that in some aspects the *City of Bowling Green* case and the *Deckert* case had differences without a distinction. The Supreme Court went on to comment regarding the state regulations of distilled spirits or wine and the city's regulation of malt beverage as follows:

There is no conflict between the subject ordinance and any regulation of the Kentucky Alcoholic Beverage Control Board. The city has spoken on the subject; the state has not preempted the subject. A municipal corporation possesses no powers except those expressly granted or those essential to the accomplishment of its declared objectives and purposes. Courts have no control over a city council as long as it acts within the scope of its express or necessarily implied powers, but if the council enacts ordinances without authority or contrary to the controlling laws in such matters or

they are unreasonable, arbitrary, or oppressive, the courts may declare such ordinances invalid. *City of Somerset v. Newton,* 259 Ky. 195, 82 S.W.2d 306. *City of Bowling Green,* 539 S.W.2d at 284.

The Supreme Court stated, in reference to K.R.S. 243.070, that:

> In the case at bar the city legislative body of a second class city has been given specific authority by KRS 243.070 to impose license fees for the privilege of trafficking in alcoholic beverages, and that privilege is broad enough to include the right to regulate the nature of the premises from which beer can be sold.

*City of Bowling Green,* 539 S.W.2d at 284.

The case of *Schwierman v. Town of Highland Park,* 130 Ky. 537, 113 S.W. 507 (1908), referred to in *Deckert,* perhaps anticipated the holding in *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), *reh'g denied,* 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1973), and *Bellanca, supra,* when, in the opinion, is stated the following:

> The retail liquor business has always been placed in a class by itself, and dealt with by special laws; so that the reasons that might deny the boards the right to discriminate between persons applying for licenses to engage in any other legitimate occupation and pursuit regulated and controlled by general laws have little or no application to this business. Although recognized legitimate and under the protection of the law, it stands apart from other lawful occupations, and must be treated in a class by itself.

This early opinion held that the town could limit the number of licenses to be issued. It is noted that in *California v. LaRue, supra,* the court stated that the case came to the court, "not in the context of censoring a dramatic performance in a theater, but rather in a context of licensing bars and nightclubs to sell liquor by the drink." *California,* 409 U.S. at 114, 93 S.Ct. at 395.

Thus, I find, from the statutes, the authority granted to cities to license premises, and the Kentucky decisions commenting on the license authority and general powers of cities, that ordinance No. 0–82–85 is within the Twenty-first Amendment authority delegated to the City of Newport.

The majority opinion, because of the holding on delegation, did not consider the preemption and vagueness issues. Since I view the issue of delegation differently than the majority, I now present my views on the remaining issues. I find on the issue of preemption that for the state to preempt it must take affirmative action.

The cases of *City of Bowling Green v. Gasoline Marketers* and *Deckert v. Levy* are to this effect. See also, *Louisville & Nashville Railroad Company v. Commonwealth,* 488 S.W.2d 329, (Ct.App.Ky. 1972) where it is stated that:

> A conflict exists between an ordinance and a statute when the ordinance permits conduct which is prohibited by statute or prohibits conduct which is permitted by the statute.

The State of Kentucky has regulated certain conduct, KRS 244.120 for example, proscribes disorderly conduct. It cannot be concluded, however, that the denial of one type of conduct is authority to engage in another, i.e. nude dancing in a licensed establishment.

I find that in order for the state to preempt local regulation of nude dancing in establishments serving alcoholic beverages it must explicitly and affirmatively prohibit localities from regulating nude dancing.

As to appellants' issue one which was first briefed and argued by the parties, the majority use the *strict standard* to review an infringement on a protected liberty interest. As to those protected interests, the majority notes the limited record below. The record was, of course, primarily by stipulation. The majority would require more.

In their brief, appellants assert that the ordinance restrains appellants' First and Fourteenth Amendment rights of free expression, association and assembly and that it presents a clash between these amend-

ments and the Twenty-first Amendment to the Constitution.

Appellees maintain that the ordinance is not an attempt to ban nude or nearly nude dancing as a form of obscenity but is an attempt to regulate the business of selling intoxicating liquor, asserting that such authority stems from the traditional police power and the Twenty-first Amendment.

Since I disagree with the majority that the Twenty-first Amendment authority is eliminated from the case by reason of the local prohibition statutes, I cite the following. In the case of *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) and *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), the Supreme Court recognized that nudity and/or its depiction may be protected as constitutional expression. But the scope of the foregoing decisions was limited by the fact that the ordinances involved prohibited nudity and/or its depiction not just in bars but "any public place." See *New York State Liquor Authority v. Bellanca, supra.*

In *California v. LaRue, supra*, the Supreme Court said that states have broad latitude under the Twenty-first Amendment to control the manner and circumstances under which liquor may be dispensed and the conclusion that sale of liquor by the drink and lewd and naked entertainment should not take place simultaneously in licensed establishments was not irrational nor was the prophylactic solution unreasonable.

The Supreme Court went on to hold that: While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

*Id.*, 409 U.S. at 118, 93 S.Ct. at 397.

The Court held that the police power of the state was strengthened by the Twenty-

first Amendment and its relationship to other amendments.

In my opinion, references to a "state" in the case sub judice are applicable to the City of Newport.

This Court speaking through Judge Celebrezze in *Felix v. Young*, 536 F.2d 1126, 1132 (6th Cir.1976) in regard to the enforcement of ordinances regulating the location of certain businesses providing adult entertainment commented on *California v. LaRue, supra*, as follows:

In *California v. Larue* [sic] the Supreme Court recognized that the broad power of the states to regulate the sale of liquor may outweigh any First Amendment interest in nude dancing. A state may promulgate broad prophylactic rules banning sexually explicit entertainment at licensed bars and cabarets so long as the regulations represent a reasonable exercise of a state's Twenty-first Amendment authority and are rationally related to the furtherance of legitimate state interests. However, if the state's authority to control liquor traffic is not implicated in a regulatory plan which impinges on free expression, the regulation must withstand stricter scrutiny. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932–933, 95 S.Ct. 2561, 2568–2569, 45 L.Ed.2d 648 (1975).

We find that the Detroit ordinance establishing licensing requirements for Group "D" Cabarets was enacted by authority of the Twenty-first Amendment and *so the relaxed standard of review in California v. Larue* [sic] *is applicable. Accord, Paladino v. Omaha*, 471 F.2d 812, 814 (8th Cir.1972). (Emphasis added.)

As noted by the district court, the parties readily admit that the nude dancing ordinance is practically a verbatim copy of the statute upheld in *Bellanca*. In *Bellanca*, 452 U.S. at 715–16, 101 S.Ct. at 2600–01, the Supreme Court stated the following:

The Court has long recognized that a State has absolute power under the Twenty-first Amendment to prohibit to-

tally the sale of liquor within its boundaries. *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 138, 60 S.Ct. 163, 166, 84 L.Ed. 128 (1939). It is equally well established that a State has broad power under the Twenty-first Amendment to regulate the times, places, and circumstances under which liquor may be sold. In *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), we upheld the facial constitutionality of a statute prohibiting acts of "gross sexuality," including the display of the genitals and live or filmed performances of sexual acts, in establishments licensed by the State to serve liquor. Although we recognized that not all of the prohibited acts would be found obscene and were therefore entitled to some measure of First Amendment protection, we reasoned that the statute was within the State's broad power under the Twenty-first Amendment to regulate the sale of liquor.

In *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), we considered a First Amendment challenge to a local ordinance which prohibited females from appearing topless not just in bars, but "any public place." Though we concluded that the District Court had not abused its discretion in granting a preliminary injunction against enforcement of the ordinance, that decision does not limit our holding in *LaRue*. First, because *Doran* arose in the context of a preliminary injunction, we limited our standard of review to whether the District Court abused its discretion in concluding that plaintiffs were *likely* to prevail on the merits of their claim, not whether the ordinance actually violated the First Amendment. Thus, the decision may not be considered a "final judicial decision based on the actual merits of the controversy." *University of Texas v. Camenisch*, 451 U.S. 390, 396, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Second, the ordinance was far broader than the ordinance involved either in *LaRue* or here, since it proscribed conduct at "any public place," a term that "could include the theater, town hall, opera place, as well as a public market place, street or any place of assembly, indoors or outdoors.'" 422 U.S., at 933, 95 S.Ct., at 2568 (quoting *Salem Inn, Inc. v. Frank*, 364 F.Supp. 478, 483 (EDNY 1973)). Here, in contrast, the State has not attempted to ban topless dancing in "any public place": As in *LaRue*, the statute's prohibition applies only to establishments which are licensed by the State to serve liquor. Indeed, we explicitly recognized in *Doran* that a more narrowly drawn statute would survive judicial scrutiny ...

Thereafter, the Court concluded, as quoted at page 8 of the majority opinion, that the power to ban the sale of alcoholic beverages included the lesser power to ban topless dancing where liquor was sold. I find that the ordinance is within the *Bellanca* doctrine and not subject to the strict standard of review.

The majority, because of its holding as to the *Bellanca* doctrine, did not address the vagueness issue. Since I differ as to the applicability of *Bellanca*, I express my view on this issue. Appellants assert that the ordinance is vague and overbroad on its face or as applied, primarily with reference to the word "simulation." Appellants suggest that the vagueness of "simulation" could involve patrons in tight fitting or revealing attire. As appellees correctly point out, the language of the ordinance and the inclusion of the word "simulation" was approved by the Supreme Court in *Bellanca*. Men of common intelligence do not have to guess at its meaning. See *Coates v. Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971).

The majority opinion holds that the ordinance does not constitute an impermissible prior restraint, and, with this finding, I concur. I would also hold that this is not an obscenity case, but a liquor regulation case following the teachings of *LaRue* and *Bellanca*.

For the foregoing reasons, I would affirm the trial court as to the judgment on both ordinances.